## Bonner and Eddy v. Mary E. Whitcomb et al.

· No. 3023.

1. **Refusal of Application for Continuance—Bill of Exceptions.**—Without
a bill of exceptions showing the application for continuance and the action of the court
upon it the action of the trial court in refusing a continuance will not be revised on
appeal.

2. **Master and Servant — Charge of Court. —** In an action by the widow and
children of an engineer killed in the service and by alleged negligence of the receivers
in charge of a railway, the court having charged fully upon the duties of employer and
employe, and upon negligence and due care, the defendants asked the charge: "If the
defendants had proper rules and gave proper instructions to employes, and the acci-
dent happened by reason of the violation of said rules or instructions by Whitcomb's
fellow servants, defendants are not liable." The instruction was refused, and properly,
because it does not fully announce the rule without the qualification "that if the fel-
low servant or servants who violated such rules and instructions of the master were
unfit and incompetent within the knowledge of the master, and as a consequence the
injury occurred;" there being testimony to the unfitness, etc., of the conductor of the
colliding train.

3. **Same—Charge—Fellow Servant.**—The defendant asked the further instruc-
tion: "If Whitcomb (the deceased) had equal chance to know the character of (con-
ductor) Hiss, and the danger of his employment, and failed to notify defendants, he
assumed the risk of the dangers by reason of Hiss' inefficiency, if he was inefficient,
and plaintiffs can not recover." This instruction was rightly refused as inapplicable
to the testimony. It was not shown that the deceased knew Hiss, or had means of
knowing his character, or that it was his duty to inquire into it.

4. **Master and Servant—Due Care by Master.**—An employe not knowing the
efficiency of fellow servants, nor having the means of knowing it, has the right to rely
upon the implied promise of the railway company (his employer) that it would take
proper care that the other servants should be fit and competent for the performance of
the duties assigned to them.

5. **Charge Properly Refused.—** The defendants requested an instruction: "If
Whitcomb (the deceased) knew of the liability of the rock train to cross the main track
and thought from what was told him that he could safely pass the crossing but failed,
plaintiffs can not recover." The principle had been given in the main charge but the
record negatived the assumed information, and the instruction was properly refused.

6.    **Assignment of Error.**—An assignment of error that "the verdict is against the law and evidence," is too indefinite and can not be considered unless the error is fundamental or imperatively demands a revision to prevent manifest injustice.

7.    **Verdict Not Excessive.** —See facts supporting a verdict for the widow and five minor children for $1500 each, aggregating $9000.

APPEAL from Houston.    Tried below before Hon. F. A. Williams. The opinion gives a statement.

*Gould & Camp*, for appellants.— 1.    If defendants had proper rules and gave proper instructions to employes, and the accident happened by reason of the violation of said rules or instructions by Whitcomb's fellow servants, defendants are not liable, and the court should have so charged the jury.    McKin. on Fel. Serv., 101.

2.    If Whitcomb had equal chance to know the character of Hiss, and the danger of his employment (with him), and failed to notify defendants (of Hiss' faults), he assumed the risk of the danger by reason of Hiss' inefficiency (if he was inefficient), and plaintiffs can not recover, and the court erred in not so instructing the jury.    Wormell v. Railway, 31 Am. and Eng. Ry. Cases, 272; Gafney v. Railway, Id., 265.

3.    If Whitcomb knew of the liability of the rock train to cross the main track, but thought from what was told him that he could safely pass the crossing, but failed, plaintiffs can not recover, and the court should have so instructed the jury.    Railway v. Lempe, 59 Texas, 19.

*Gregg & Reeves*, for appellees.— 1.    If an injury happens by reason of a violation of the rules and regulations of the master by a fellow servant the master is liable therefor if such fellow servant was unfit and incompetent and the master was chargeable with notice thereof.

2.    A servant does not assume risks from incompetent fellow servants unless such incompetency was known to him, and he is not charged with any duty of investigation; but it is proper to omit a charge on this subject in the absence of evidence raising the issue of his knowledge.

3.    An engineer on a regular passenger train who has the absolute right of way along the road in both directions, and who by the rules of the company is required to run until his train is flagged, is not guilty of contributory negligence by attempting to cross an unflagged crossing leading to a rock quarry, and especially so when the conductor of the rock quarry road, being present at the time, requests him to hurry by the crossing with his train and tells him that the rock train will not leave the quarry until the passenger train has passed the crossing.

MARR, JUDGE.—Mary E. Whitcomb and her five minor children brought this suit for damages for the death of the husband and father of appellees, Edward Whitcomb, who was killed in a collision while in

the employ of appellants as locomotive engineer on defendants' road, at the town of Riverside, on the 17th day of March, 1889.

Plaintiffs aver that at the place of the fatal accident defendants have two roads crossing each other—the main line on which deceased was running a passenger engine, and the other a short road running into a rock quarry, on which defendants' trains were hauling rock. That while deceased was passing with his engine and passenger train along the main line on schedule time in the proper performance of his duty a rock train from-the quarry was negligently permitted by defendants to cross the main line and collide with said passenger train, causing deceased to jump from his engine and be struck by a heavy rock which fell from the rock train as it struck his engine, injuring him so that he died a few days after.

Plaintiffs allege the following acts of negligence of defendants which caused the death of Edward Whitcomb:

1.  Negligently permitting said rock train to run into said passenger train.

2.  Failing to establish proper rules and regulations to prevent said rock train from running into trains on the main line by failing to keep a watchman at the crossing.

3.  Continued negligence of the conductor of said rock train in failing to station a watchman or put up signals at said crossing.

4.  Incompetence and habitual drunkenness of said conductor of said rock train and his habitual absence from his post of duty—all of which was well known to defendants, or by reasonable diligence could have been known to them.

Plaintiffs claimed $35,000 as damages.

Defendants answered by general denial and not guilty, and alleged contributory negligence on part of deceased and his fellow servants; and further, that if said conductor of said rock train was incompetent and negligent that fact was unknown to defendants and well known to deceased, who failed to notify defendants; and said conductor was promptly discharged after said accident.

Verdict and judgment for plaintiffs for $9000, from which defendants appeal and assign the following errors:

1.  The court erred in overruling defendants' motion for a continuance, because said motion showed that the absent witness Aldridge was a material witness for defendants and they had used diligence to procure his testimony.

2.  The court erred in refusing to give the jury the following special instructions asked by defendants:

(1) If defendants had proper rules and gave proper instructions to employes and the accident happened by reason of the violation of said rules or instructions by Whitcomb's fellow servants, defendants are not liable.

(2) If Whitcomb had equal chance to know the character of conductor Hiss and the danger of his employment and failed to notify defendants he assumed the risk of the dangers by reason of Hiss' inefficiency, if he was inefficient, and plaintiffs can not recover.

(3) If Whitcomb knew of the liability of the rock train to cross the main track, and thought from what was told him that he could safely pass the crossing, but failed, plaintiffs can not recover.

3.   The court erred in overruling defendants' motion for a new trial for the errors above and because the verdict is contrary to the law and the evidence; and the evidence showed that the absent witness Aldridge was station agent at Riverside while conductor Hiss was there and the accident happened, and therefore was a material witness.

We are not authorized to consider the first assignment of error, because the ruling of the court below in refusing the application for the continuance was not preserved by a bill of exceptions. We find no bill in the transcript presenting this point. The recitation in the entry of the final judgment that the defendants excepted to this action of the court can not, as we have repeatedly decided, supply the place of a formal bill of exceptions signed by the judge, which is indispensable to revision of his decision on such motion by the appellate court.

We find no error in the refusal of the court below to give the first and second special instructions as requested by the appellant. They are copied in the first and second paragraphs of the second assignment of error which we have inserted above. The charge requested as set forth in the first paragraph of this assignment does not fully announce the correct rule of law when applied to the facts of this case without a qualification that if the fellow servant or servants who violated such rules and instructions of the master were unfit and incompetent within the knowledge of the master, and as a consequence the injury occurred, then the plaintiff would not be precluded from recovery by the mere fact that an incompetent servant violated proper rules or instructions of the common master. To hold otherwise would destroy the doctrine of the master's liability for his own negligence in regard to the unfitness and incompetency of the fellow servant. Cool. on Torts, 560; Paulmier v. Railway, 5 Vroom., 151.

It is apparent to us from the record that the verdict in favor of plaintiffs was based upon the negligence of one Hiss (a conductor of the rock or local freight train of defendants), whom the jury believed from the evidence to have been unfit and incompetent. In its general charge to the jury we think the court below fairly, correctly, and pointedly instructed the jury on this subject as well as upon the other issues in the case. It correctly instructed the jury as to the degree of care demanded by law of the defendants in employing and retaining fit and competent servants. The court also instructed the jury that the deceased and Hiss and the other employes were fellow servants, and in

effect that plaintiffs could not recover on account of their negligence, and not for the negligence of Hiss unless he was shown to be unfit and incompetent and that his incompetency was known or ought to have been known to the defendants in time to have prevented the injury to Whitcomb. The court also charged the jury that the plaintiffs' intestate was himself bound "to the exercise of such care as persons of ordinary prudence would use in like situations and circumstances," and that if said Whitcomb failed "to employ such care" and that the failure contributed to his injury, "then the plaintiffs can not recover though all other facts to entitle them should appear."

After having correctly instructed the jury concerning the defendants' liability *vel non*, on account of the incompetency of Hiss, the charge proceeds: "If it should further appear that it was one of the duties of Hiss' position to place a watchman or flag at this crossing or to otherwise give notice to Whitcomb of the approach of the rock train, and that he failed to perform such duty, and that as the direct and natural result of such failure Whitcomb was killed, the defendants would be liable unless Whitcomb himself was guilty of negligence which would preclude him from recovery; but unless *Hiss was unfit or incompetent for the situation he held, and unless defendants or their officers above specified knew such fact, or by the care referred to ought to have known it,* defendants would not be liable, *though Hiss may have been guilty of negligence on the occasion in question,* and though Hiss may have been, with the knowledge of defendants, incompetent, if he did not on the occasion in question fail to perform a duty which rested on him, in the particular above defined, or if his failure to do so did not cause Whitcomb's injury, you will find for defendants."

Also the court charged: "A servant competent when employed is presumed to continue so until the contrary appears, and in which case the employer is not bound to discharge him until he ascertains that the servant has become unfit, or by the exercise of the care referred to ought to know it, and the employer is entitled to a reasonable time within which to discharge the incompetent servant and supply his place."

A charge very similar in substance to the one given above on the issue now under consideration, and delivered by the same learned judge who presided at the trial of the present case in the District Court, was considered and approved by the Supreme Court in the case of the International & Great Northern Railway Company v. Hall, 78 Texas, 657. The master was not only bound to provide proper rules, but to see to their enforcement to a reasonable extent. Railway v. Farmer, 73 Texas, 85; Railway v. Smith, 76 Texas, 618, and authorities cited; Wood's Mast. and Serv., secs. 398, 403; Beach on Con. Neg., secs. 95, 96; Railway v. Hall, *supra*.

The second special instruction requested by the defendant and embodied in the second paragraph of this assignment (which we have inserted above) does not, as we think, state the law correctly on this subject, and especially under the facts of this case. There was no evidence that Whitcomb (the deceased) knew of Hiss' incompetency. They appear to have been strangers. It is scarcely conceivable that a conductor as Whitcomb was, on a through passenger train, should possess equal opportunities ("chance" is the word used in the requested instruction) of knowing Hiss' character with the defendant—Argus-eyed and Briareus-armed—with a hundred eyes to discover the incompetency of its servants, and a hundred hands to execute its commands. The deceased was not the servant of the company who employed Hiss. He had no authority to employ or discharge his fellow servants. He was not required by his employment to superintend or to inquire into their competency and fitness. It is shown that that duty devolved upon other servants of the company. The law devolved no such duty upon him under the circumstances as to conductor Hiss. It may be conceded .that if the deceased had known or been timely warned of the incompetency of Hiss, which the jury found was known to the company, that he would have been at least bound to give notice thereof to the company or take the risk of injury on account of the negligence of Hiss, but such is not the case as presented in the record. We think that he had under the circumstances the right to rely upon the implied promise of the company that it would take proper care that the other servants should be fit and competent for the performance of the duties assigned to them, in the absence of proof that he knew of Hiss' incompetency. This has been frequently held to be the correct rule in this State as applied to the defective condition of the machinery and roadbed of the railway company, and we perceive no good reason to distinguish the duty of having competent servants from these other duties above mentioned devolved by law upon the master. Railway v. Aylward, 79 Texas, 675; Railway v. O'Feill, 78 Texas, 486; Wood's Mast. and Serv., 800–803; Railway v. Lehmberg, 75 Texas, 62; Beach on Con. Neg., secs. 95, 127, 140.

The substance of. the idea, or view of the law, indicated by the third special instruction requested by defendants and copied above ought to have been given if there was any evidence tending to support the hypothesis therein assumed, unless the court had already instructed the jury to that effect. This we think the court had substantially done in its general charge, wherein as we have already shown it instructed the jury that the plaintiffs could not recover in the action if the deceased failed to exercise due care in managing his own train to prevent the injury to himself, etc. This was sufficient under the facts of the case. But again, we fail to find in the record any evidence that "Whitcomb knew of the liability of the rock train to cross the main track" *at the*

*time* he attempted to pass the intersection at that point with his regular passenger train, which undoubtedly had the preference. On the contrary, it appears to us that from the assurances of conductor Hiss, who controlled the rock train, Whitcomb thought that the latter train would *not* attempt to cross the main track until after his own train had passed. Hiss seems to have been at the depot instead of with his own train or at the crossing, as he very probably should have been or else have stationed some one there to flag the train. At least there is much evidence to that effect.

Appellants in their statement under this assignment say: "Whitcomb was notified by the conductor of the rock train just before he (Whitcomb) left the depot, two hundred and fifty or three hundred yards from the crossing, that the rock train was up in the quarry and was coming down." The third special instruction was evidently requested on this hypothesis. Appellees submit the following counter-statement: "Appellants' statement is directly contrary to the facts. The rock train conductor did not tell Whitcomb that the rock train was coming down, but told Whitcomb's fireman that it was *not* coming down and to 'hurry up by' so as to let them come down."

An examination of that portion of the transcript relied on by both parties clearly shows that appellants' counsel are mistaken, and that the statement made by counsel for appellees is correct. In fact the evidence is much stronger in favor of appellees' position than as shown in the statement. Whitcomb was fully assured when he left the depot that the rock train was up at "the quarry and was *not* coming down" until after he had passed the intersection with his own train.

For the reasons given we hold that there was no error in refusing the third instruction asked by the defendant.

The third assignment of error (which we have copied above) is too general and indefinite under the statute and the rules and decisions of the Supreme Court to authorize reversal on that account, if well taken, unless the error is fundamental or imperatively requires revision at our hands to prevent manifest injustice. No such case is presented. The verdict is simply alleged to be "contrary to the law and the evidence," not even alleged to be excessive in the amount of damages allowed. This issue does not seem to be raised. Counsel seem only to contend that the evidence shows culpable negligence on Whitcomb's part, but this can not be sustained after the verdict of the jury. Sup. Ct. Rules 25, 26; Sayles' Civ. Stats., art. 1037, and note.

The assignment is not well taken in our opinion. There was a curve in the track of the quarry road, and there is evidence that owing to the bushes in the angle of the road the approaching train could not be seen but a short distance from the crossing.

We have carefully examined the record on this subject to see if injustice has been done to the appellants by the verdict. Whitcomb left

a wife and five minor children surviving. The jury allowed each of them $1500, aggregating $9000. The children were aged respectively 11, 9, 8, 5, and 3 years—all girls except the youngest. Whitcomb was shown to be a faithful and competent engineer, 34 years of age and in good health, and that he earned from $140 to $175 monthly. The charge of the court was more restrictive of plaintiffs' right to recover damages than the law contemplates when the suit is by the *wife* and *minor* children for the death of the husband and father, to whose care, support, maintenance, and society they are entitled. The rule of pecuniary expectancy from the deceased adopted by the court below has reference to such of the kin of the deceased as ordinarily have no pecuniary interest in his life nor absolute claim upon him for support or maintenance, as for example adult sons. Railway v. Lehmberg, 75 Texas, 67–69, *supra;* Railway v. Ormond, 64 Texas, 489. Of this part of the charge, however, appellant can not and does not complain.

We think that the judgment ought to be affirmed.

*Affirmed.*

Adopted March 10, 1891.